IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>                              )<br>               Petitioner, )<br>                              )<br>          vs.                 )<br>                              )<br>                              )<br> JAY ABREGANA,                 )<br>                              )<br>               Respondent.  )<br> _____ ) | CIVIL NO. 07-00385 HG-BMK |

I.        Respondent's Motion to Dismiss No. 1 (On the Ground
          that Congress Exceeded Its Constitutional Authority in
          Enacting 18 U.S.C. Section 4248) is **DENIED**;

II.       Respondent's Motion to Dismiss No. 2 (On the Ground
          That Section 4248 Violates the Constitution's Ex Post
          Facto, Double Jeopardy, and Cruel and Unusual
          Punishment Clauses) is **DENIED**;

III.      Respondent's Motion For An Order Requiring the
          Government to Establish the Criteria for Commitment
          Beyond a Reasonable Doubt is **DENIED**;

IV.       Respondent's Motion for an Order Regarding the
          Applicability of the Fifth and Sixth Amendments in a
          Section 4248 Proceeding is **DENIED**;

V.        Respondent's Motion to Dismiss No. 3 (On the Ground
          That Sections 4247(a)(5), 4247(a)(6), and 4248 Are Void
          for Vagueness) is **DENIED**.


**<u>LEGAL FRAMEWORK</u>**

**<u>Adam Walsh Child Protection and Safety Act of 2006</u>**

     The Adam Walsh Child Protection and Safety Act of 2006, P.L.

109-248, contains numerous provisions aimed at protecting

children from sexual exploitation, violent crime, child abuse, and child pornography.  The Act, among other things, establishes a sex offender registry program, enhances federal criminal penalties for crimes against children, provides for civil commitment of dangerous sex offenders, and contains measures aimed at prevention of child pornography.

At issue in this case is the section of the Act providing for the civil commitment of "sexually dangerous persons."  A "sexually dangerous person" is defined in 18 U.S.C. § 4247(a)(5) as "a person who has engaged or attempted to engage in sexually violent conduct or child molestation and who is sexually dangerous to others."  Pursuant to 18 U.S.C. § 4247(a)(6) a person is considered "sexually dangerous to others" if he "suffers from a serious mental abnormality, or disorder as a result of which he would have serious difficulty in refraining from sexually violent conduct or child molestation if released."

18 U.S.C. § 4248 sets forth procedures for "civil commitment of sexually dangerous person."  The civil commitment provisions apply to three categories of individuals:  (1) those persons in the custody of the Bureau of Prisons; (2) those persons who have been held by the Attorney General pursuant to 18 U.S.C. § 4241; and (3) those persons in federal custody against whom all charges have been dropped owing to mental incapacity.

Section 4248(a) provides that the Bureau of Prisons may

2

institute proceedings by certifying that a person is sexually dangerous.  When a person is certified as "sexually dangerous" under Section 4248, the court must conduct a hearing pursuant to the provisions of Section 4247(d).[1]  Under Section 4248(a), the filing of the certificate stays the person's release pending completion of the hearing and commitment procedures.  18 U.S.C. § 4248(a) ("A certificate filed under this subsection shall stay the release of the person pending completion of procedures contained in this section.")

With regard to the hearing, Section 4248(d) provides:

> **Determination and disposition.**--If, after the hearing, the court finds by clear and convincing evidence that the person is a sexually dangerous person, the court shall commit the person to the custody of the Attorney General. The Attorney General shall release the person to the appropriate official of the State in which the person is domiciled or was tried if such State will assume responsibility for his custody, care, and treatment. The Attorney General shall make all reasonable efforts to cause such a State to assume such responsibility. If, notwithstanding such efforts, neither such State will assume such responsibility, the Attorney General shall place the person for treatment in a suitable facility, until--

> (1) such a State will assume such responsibility; or

---

[1] 18 U.S.C. § 4247(d) sets forth the hearing procedures as follows: "Hearing.--At a hearing ordered pursuant to this chapter the person whose mental condition is the subject of the hearing shall be represented by counsel and, if he is financially unable to obtain adequate representation, counsel shall be appointed for him pursuant to section 3006A. The person shall be afforded an opportunity to testify, to present evidence, to subpoena witnesses on his behalf, and to confront and cross-examine witnesses who appear at the hearing."

(2) the person's condition is such that he is no longer
sexually dangerous to others, or will not be sexually
dangerous to others if released under a prescribed
regimen of medical, psychiatric, or psychological care
or treatment; whichever is earlier.

Discharge of the civilly committed person may be requested
by the Director of the facility in which the person is being
held, counsel for the person, or his legal guardian.  See 18
U.S.C. § 4247(h); 18 U.S.C. § 4248(e).  A civilly committed
person may also challenge his confinement by writ of habeas
corpus.  See 18 U.S.C. § 4247(g).

The Director of the facility in which a person is committed
is required to "prepare annual reports concerning the mental
condition of the person and containing recommendations concerning
the need for his continued commitment" and submit them to the
court.  18 U.S.C. § 4247(e).

## BACKGROUND

Respondent Jay Abregana ("Abregana" or "Respondent"), the
Defendant in United States v. Abregana, Cr. No. 01-00385, is a 38
year old male who is presently an inmate at the Federal Detention
Center in Honolulu, Hawaii.  Abregana served his sentence for his
underlying criminal conviction, but was detained on the day of
his projected release pursuant to a certification made in
accordance with the Adam Walsh Child Protection and Safety Act,
Pub. L. No. 109-248, Title III, § 302(4), 102 Stat. 620 (July 27,
2006), codified at 18 U.S.C. § 4248(a).

4

On July 20, 2007, the Government filed a "Notice of Certification that Respondent is a Sexually Dangerous Person, and Request for Hearing Pursuant to 18 U.S.C. § 4248(A)".  The Notice informs the Court that Respondent has been certified to be a "sexually dangerous person" pursuant to Section 4248(a), and attaches the certification testified to by Anthony A. Jimenez, chairperson of the Federal Bureau of Prisons (BOP) Certification Review Panel in Washington D.C.

On July 20, 2007, Chairperson Jimenez certified that Respondent is a sexually dangerous person within the meaning of Section 4248.  In certifying Respondent as sexually dangerous, Chairperson Jimenez listed Respondent's offense conduct as:

(1) Using the internet and U.S. mail to transmit images of child pornography, and possessing 13 images of himself and a 15 year old boy engaging in oral sex[2];

(2) Respondent violated his supervised release in June 2005 by having sexual contact with a 17 year old male, failing to report for sex offender treatment, using drugs, and failing to comply with drug testing; and

(3) Respondent violated his supervised release in March 2007 by refusing to comply with drug testing, and by using a computer

---

[2]The certification does not mention Abregana's state court conviction for sexual assault in the fourth degree under Haw. Rev. Stat. § 707-733 for an incident that occurred two months before his underlying federal conviction which involved a twelve year old boy in a movie theater.

to access pornography, and to contact 3 boys, ages 10, 12, and 14.

The certification was based on review of Abregana's Bureau of Prison records which include, but are not limited to, the offense conduct listed above; and

(4) A limited psychological review which indicated: Axis I diagnosis of Pedophilia, Sexually Attracted to Both Males and Females, Nonexclusive Type; and Axis II diagnosis of Histrionic Personality Disorder; and

(5) An initial assessment using two actuarial risk assessment instruments (Static-99 and Rapid Risk Assessment for Sexual Offense Recidivism (RRASOR)). The assessment results "in addition to his current and prior offense conduct, failure in sex offender treatment, and repeated violations of supervised release, indicate he will have serious difficulty refraining from sexually violent conduct or child molestation if released." (Doc. 1, Exhibit A, Page 2).

In accordance with Section 4248, the United States has moved for a hearing to determine whether Respondent is a "sexually dangerous person" subject to civil commitment for treatment in an appropriate facility.

On August 14, 2007, Respondent filed five motions challenging the constitutionality of Section 4248's civil commitment scheme:

(I)     Motion to Dismiss No. 1 (On the Ground that Congress Exceeded its Constitutional Authority);

(II)    Motion to Dismiss No. 2 (On the Ground that Section 4248 Violates the Constitution's Ex Post Facto, Double Jeopardy, and Cruel and Unusual Punishment Clauses);

(III)   Motion for an Order Requiring the Government to Establish the Criteria of Commitment Beyond a Reasonable Doubt;

(IV)    Motion for an Order Regarding the Applicability of the Fifth and Sixth Amendments in § 4248 Proceedings; and,

(V)     Motion to Dismiss No. 3 (On the Ground that Sections 4247(a)(5), 4247(a)(6), and 4248 are Void for Vagueness).

On September 5, 2007, the Government filed memorandums in opposition to Respondent's motions.

On September 13, 2007, Respondent filed his reply memorandum.

On September 24, 2007, the Court held a hearing on Respondent's motions and on the United States' request for a hearing pursuant to Section 4248(a).  The Court took Respondent's motions under advisement, but to continue moving the matter forward, entered an "Order Directing Examination Pursuant to 18

7

U.S.C. § 4247 and 4248." ("Examination Order").  Respondent's counsel consented to the Examination Order insofar as it permitted the examination to move forward, but preserved Respondent's constitutional challenges as set forth in Respondent's various motions.

The Examination Order permitted a psychiatric or psychological examination of Respondent and ordered that the resulting report be filed with the Court and counsel.  The Court further ordered that the examination be conducted within a reasonable period of time, not to exceed forty-five days, and permitted the United States to seek a reasonable extension of time, not to exceed thirty days, for the examination to be completed.  The Court directed Respondent to advise it if Respondent sought an examination by a separate examiner under 18 U.S.C. § 4247(b).

The Court then scheduled an evidentiary hearing for November 26, 2007.  Per counsel's request, and due to the delay in preparing the psychological report, the Court rescheduled the hearing to January 2008.

A status conference was held on January 16, 2008, and Respondent's oral motion to continue the evidentiary hearing was granted.

Upon the parties' request, and with Respondent's express consent, the Court continued the evidentiary hearing until June

23, 2008.  (Doc. 27.)

Additional memoranda both in support and in opposition to the various motions continued to be filed.  At a status conference held on May 28, 2008, issues dealing with the retained experts of Respondent and the Government were agreed upon by the parties.

On June 19, 2008, the Court orally ruled on the motions before the Court.  This Order sets forth the Court's reasons behind the oral rulings.

## ANALYSIS

Respondent filed five motions that bring a limited constitutional challenge to Title 18 U.S.C. § 4248 of the Adam Walsh Child Protection and Safety Act.  Respondent contends that Congress exceeded its authority in enacting the statute as applied to persons, like Respondent, who are in the custody of the Bureau of Prisons, but whose sentences have expired. Respondent also argues that the commitment scheme is criminal and not civil in nature and therefore a number of additional constitutional protections are required.  Respondent also argues the legislation is void for vagueness and that he is not a "sexually dangerous person" as defined by the Act.

The Court will first address whether Congress acted within its authority when it enacted Section 4248 of the Act (Abregana's Motion to Dismiss No. 1) before addressing the other issues

9

Respondent raises.

**I.    Congress Did Not Exceed Its Authority in Enacting Section 4248.  Respondent's "Motion to Dismiss No. 1 On the Ground that Congress Exceeded its Constitutional Authority in Enacting 18 U.S.C. § 4248" is DENIED**

Respondent argues that prescribing a statutory scheme for the involuntary civil commitment of sexually dangerous people who have completed their federal sentences does not fall within any of Congress' enumerated powers.[3]  According to Respondent, Section 4248 is, therefore, unconstitutional because Congress exceeded its authority in enacting it.

**A.    *Congressional Authority to Enact Section 4248***

In his original filings Respondent contended that "*his* confinement is unconstitutional under § 4248, either because the statute is facially unconstitutional or because it is unconstitutional as applied to him."  (Reply at 4 (emphasis in original) and at 6, 7-8.)  In subsequent hearings and filings in this matter, Respondent clarified that he challenges the statute only as applied to him and to persons similarly situated.

Respondent has refined his challenge, asking that the ruling

---

[3]The Tenth Amendment reflects the limit of enumerated powers: the "powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States, respectively..." U.S. Const., Amend X.  As a private party, however, Respondent lacks standing to assert an independent constitutional claim alleging that the Act violates the Tenth Amendment.  See Tenn. Elec. Power Co. v. Tenn. Valley Auth., 306 U.S. 118, 143-44 (1939); Medieros v. Vincent, 431 F.3d 25, 36 (1st Cir. 2005) (commercial fisherman lacked standing to bring Tenth Amendment claim).

extend to persons who have completed their entire sentence, including any supervised release provisions.  The United States correctly points out that it is difficult to craft the sub-class Respondent attempts to designate.  Respondent was certified, just prior to the end of his sentence, when he was properly in the custody of the Bureau of Prisons.  The foundation of the power of federal courts to declare an Act of Congress unconstitutional lies in the power and duty of those courts to decide cases and controversies properly before them.  United States v. Raines, 362 U.S. 17, 20 (1960).  The Court will not reach any issue not presented in the case before it.

Respondent's initial motion is based on his allegation that Congress lacked authority to enact Section 4248 pursuant to its Commerce Clause power.

The United States' position is, and the Court agrees, that Section 4248 was validly enacted as a necessary and proper exercise of the United States' power to prevent the future commission of federal crimes.  The Necessary and Proper Clause provides that Congress shall have the power "[t]o make all Laws which shall be necessary and proper for carrying into Execution the foregoing Powers, and all other Powers vested by this Constitution in the Government of the United States, or in any Department of Officers thereof."  U.S. Const. Art. I, § 8, cl. 18.

The Necessary and Proper Clause does not, in and of itself, provide for Congressional authority to enact legislation. Rather, it allows Congress to enact legislation that is auxiliary to an incontestable federal power. _Cf._ Watters v. Wachovia Bank, N.A., 127 S.Ct. 1559, 1573 (2007) ("Regulation of national bank operations is a prerogative of Congress under the Commerce and Necessary and Proper Clauses."); United States v. Bynum, 327 F.3d 986, 991 (9th Cir. 2003) ("'[A] basis for the enactment of § 666 may be found in Congress's authority, under the Necessary and Proper Clause, to protect its capacity to fruitfully exercise the _spending power_.'") (citation omitted; emphasis added).

The Supreme Court explained the scope of the Necessary and Proper Clause in M'Culloch v. State Of Maryland, 17 U.S. (4 Wheat.) 316, 421 (1819), stating:

> . . . [W]e think the sound construction of the
> constitution must allow to the national legislature
> that discretion, with respect to the means by which the
> powers it confers are to be carried into execution,
> which will enable that body to perform the high duties
> assigned to it, in the manner most beneficial to the
> people.  Let the end be legitimate, let it be within
> the scope of the constitution, and all means which are
> appropriate, which are plainly adapted to that end,
> which are not prohibited, but consist with the letter
> and spirit of the constitution, are constitutional.

The question of congressional power to commit a mentally ill person, held pursuant to federal criminal proceedings, was presented to the United States Supreme Court in 1956.  In Greenwood v. United States, 350 U.S. 366 (1956) the question of

civil commitment of a mentally ill person, who was unable to stand trial, was unanimously held by the Supreme Court to be "plainly within congressional power under the Necessary and Proper Clause." Id. at 375.   The Supreme Court held that the power to prosecute federal crimes was the basis of the legislative authority to act.

> **1.   Congress Had Authority to Enact Section 4248 As a Necessary and Proper Means to Carry Out Its Power to Prosecute or to Prevent Criminal Conduct**

The United States asserts that, under the Necessary and Proper Clause, "the federal government has a compelling interest in preventing the commission of crimes by persons in federal custody who present demonstrable dangers". (Gov. Opp. at 18, Doc. 9.)

The question before the Court is whether Section 4248 is unconstitutional as applied to those persons, such as Respondent, who are in federal custody, but whose prison terms have expired.

Congress acted within its authority in enacting Title 18 U.S.C. § 4248 because it has the power to criminalize certain conduct and to "make all laws which shall be necessary and proper" to execute its enumerated powers.   The ruling in Greenwood is limited to the narrow constitutional issue presented in that case, but the basis of the decision is instructive.   The Court upheld the statute, authorizing commitment of an accused found mentally incompetent to stand trial, and found the statute

13

applied not only to a temporary disability but also applied if the disability was permanent.  Mr. Justice Frankfurter wrote:

> The power that put him into such custody-the power to prosecute for federal offenses-is not exhausted.  Its assertion in the form of the pending indictment persists.  The District Court has found that the accused is mentally incompetent to stand trial at the present time and that, if released, he would probably endanger the officers, property, or other interests of the United States-and these findings are adequately supported.  In these circumstances the District Court has entered an order retaining and restraining petitioner, while in his present condition, with habeas corpus always available when circumstances warrant.  This commitment, and therefore the legislation authorizing commitment in the context of this case, involve an assertion of authority, duly guarded, auxiliary to incontestable national power.  As such it is plainly within congressional power under the Necessary and Proper Clause.  Art. I, s 8, cl. 18.

Greenwood 350 U.S. 375.

Other Supreme Court decisions have recognized the importance of the Necessary and Proper Clause in the execution of Congress's Constitutional authority.  See Gonzalez v. Raich, 545 U.S. 1, 34 (2005) (Scalia, J., concurring in judgment) ("Congress's regulatory authority over intrastate activities that are not themselves part of interstate commerce (including activities that have a substantial effect on interstate commerce) derives from the Necessary and Proper Clause."); id. at 38 ("the Necessary and Proper Clause does not give "Congress ... the authority to regulate the internal commerce of a State, as such," but it does allow Congress "to take all measures necessary or appropriate to" the effective regulation of the interstate market, "although

intrastate transactions ... may thereby be controlled.")
(citations omitted).

Two other federal district courts have found the source of
congressional authority for the Adam Walsh Act resides in the
power to prevent further federal sex crimes.  "Section 4248 is a
necessary and proper exercise of the government's power under the
Commerce Clause to prevent the commission of federal sex crimes."
United States v. Shields, 522 F.Supp.2d 317, 328 (D. Mass. 2007);
see United States v. Carta, 503 F.Supp.2d 405, 407-08 (D. Mass.
2007) (scope of Congress's auxiliary power extends so far as "to
allow Congress to prevent the release of those lawfully in
custody, where it has rationally set up a process for determining
that those individuals are likely to commit further acts of
sexual violence proscribed under Congress's Commerce Clause
authority").

Other commitment schemes, similar to that contained in
Section 4248, have been held to be necessary and proper to
prevent the future commission of federal crimes.  (Gov. Opp. at
15, Doc. 9.)  In particular, the United States points to United
States v. Perry, 788 F.2d 100 (3d Cir. 1986) and United States v.
Salerno, 481 U.S. 739 (1987).

Both Salnero and Perry involved constitutional challenges to
the Bail Reform Act of 1984.  The Bail Reform Act allows a
federal court to detain an arrestee pending trial if the

government demonstrates by clear and convincing evidence, after an adversary hearing, that no release conditions "will reasonably assure . . . the safety of any other person and the community." 18 U.S.C. § 3142(f). In upholding the Bail Reform Act's pretrial detention provision on the basis of future dangerousness, the Perry court relied heavily on the fact that it addressed "only danger to the community from the likelihood that the defendant will, if released, commit one of the proscribed federal offenses." Perry, 788 F.2d at 111. Reading the Act in this way, the Perry court concluded that "because Congress has the power to proscribe the activities in question, it has the auxiliary authority, under the necessary and proper clause, to resort to civil commitment to prevent their occurrence." Id.

The following year, the United States Supreme Court in Salerno similarly upheld the constitutionality of the Bail Reform Act. In addressing the respondents' challenge under the Due Process Clause of the Fifth Amendment of the United States Constitution, the Supreme Court first considered whether the Act's restriction on liberty constituted an impermissible punishment or a permissible regulation. Salerno, 481 U.S. at 747. After finding that preventing danger to the community was a legitimate regulatory goal and not an impermissible punishment, the United States Supreme Court focused on the governmental interest at stake. Id. The Supreme Court emphasized that the

16

Bail Reform Act "narrowly focuses on a particularly acute problem in which the Government interests are overwhelming.  The Act operates only on individuals who have been arrested for a specific category of extremely serious offenses." Id. at 750 (citing 18 U.S.C. § 3142(f)).

Perry and Salerno recognize that the federal government has a compelling interest in preventing the commission of crimes by persons in federal custody who present demonstrable dangers.

Case law rejecting constitutional challenges to the DNA Act, 18 U.S.C. § 3583(d), also illustrate the federal government's power, under the Necessary and Proper Clause, to pass laws to "aid the Executive in prosecuting those who . . . violate federal criminal laws." United States v. Plotts, 347 F.3d 873, 879 (10th Cir. 2003).  The DNA Act requires individuals convicted of specified offenses to provide samples to aid in the investigation and prosecution of crimes.  The Ninth Circuit Court of Appeals rejected challenges to the constitutionality of the DNA Act in United States v. Reynard, 473 F.3d 1008, 1021-24 (9th Cir. 2007). In finding that the DNA Act did not exceed the federal government's Commerce Clause power, the Reynard court discussed the federal government's authority to impose conditions of supervised release.  The court noted that such authority "arose when [the defendant] committed a crime that Congress had the authority to identify as a federal offense." Reynard, 473 F.3d

17

at 1022. The DNA Act requires DNA extraction as a condition of supervised release for certain qualifying federal offenses. Id. The court concluded: "Since the federal government has the authority, under the Commerce Clause, to denominate Reynard's conduct a federal offense, it has the power to incarcerate him and impose upon him the terms of his supervised release, including the requiring him to submit a DNA sample under the DNA Act." Id.

Similarly, the Adam Walsh Act provides a method for the federal government to try to prevent the commission of sexually violent conduct and child molestation crimes. The Act is narrowly tailored to permit only the detention of those persons in federal custody who, the government has shown by clear and convincing evidence, are sexually dangerous to others. Because Congress has the power under the Commerce Clause to criminalize and punish such conduct[4], it has the necessary and proper authority to prevent a person, in federal custody, and who would have serious difficulty refraining from sexually violent conduct or child molestation, from committing such a crime. The fact that it is unknown whether the committed individual is likely to commit a federal or a state crime, such that the Act may end up

---

[4] See 18 U.S.C. § 3559 (mandatory minimum term for violent crimes against children); 18 U.S.C. §§ 2241-45 (offenses and punishment for sexual misconduct); 18 U.S.C. §§ 2251-52 (criminalizing sexual exploitation of children).

preventing the commission of a purely state law offense, rather than a federal crime, does not render it constitutionally infirm.

In the context of the Bail Reform Act, the <u>Perry</u> and <u>Salerno</u> Courts found it sufficient for Congress to make the legislative determination that a person who has been charged with a federal offense is likely to commit the enumerated offenses if discharged into the community.  The Adam Walsh Act requires that a court determine, by clear and convincing evidence, that a person will be sexually dangerous to others.  The federal government need not, and could not, predict with certainty that the person in federal custody will commit a federal crime.  <u>Cf.</u> <u>Gonzales v. Raich</u>, 545 U.S. 1, 17 (2005) ("We have never required Congress to legislate with scientific exactitude.  When Congress decides that 'the total incidence' of a practice poses a threat to a national market, it may regulate the entire class."); <u>United States v. Waybright</u>, __ F.Supp.2d ___ , 2008 WL 2380946, at *7 (D. Mont. June 11, 2008) ("the interplay between the Commerce Clause and the Necessary and Proper Clause may permit Congress to regulate categories of activity beyond those that substantially affect interstate commerce").  Section 4248 is an appropriate and reasonably adapted means for Congress to attain the legitimate end of proscribing sexually violent conduct or child molestation by persons in federal custody in order to prevent harm to the public.  Necessary and Proper Clause jurisprudence supports a

19

finding that Congress acted within its authority in enacting Section 4246.  See Raich, 545 U.S. at 35 (Scalia, J., concurring) ("The relevant question is simply whether the means chosen are reasonably adapted to the attainment of a legitimate end under the commerce power.").

### 2.   *Similarity Between Section 4248 and Section 4246*

Prior to the passage of Section 4248, Congress legislated in the realm of civil commitment via the Insanity Defense Reform Act of 1984, . . . 18 U.S.C. § 4246 ("Section 4246").  A comparison between Section 4246 and Section 4248 is instructive.  Section 4246 provides for the continued hospitalization of a person who has been charged with a federal offense but was not tried because of a continuing mental disease or defect.  See United States v. Trillo-Cerda, 244 F.Supp.2d 1070, 1071 (S.D. Cal. 2002) (Section 4246 "sets forth a detailed procedure for handling federal pretrial detainees who are determined to be both incompetent to stand trial and a danger to other persons or property if released.")  Section 4246, like Section 4248, also applies to persons in the custody of the Bureau of Prisons whose sentences are about to expire.  Section 4248 and Section 4246 both allow federal authorities to detain dangerous persons already in federal custody.  Section 4246 contains certification procedures similar to Section 4248 and both Section 4246 and 4248 provide for a hearing pursuant to the provisions of Section 4247(d).

The Ninth Circuit Court of Appeals addressed the constitutionality of Section 4246 in United States v. Sahhar, 917 F.2d 1197 (9th Cir. 1990) ("Sahhar I") and 56 F.3d 1026 (9th Cir. 1995) ("Sahhar II").  In Sahhar I, the court recognized that substantial federal interests were served by the continued civil commitment of a dangerous, mentally ill person regardless of whether he was committed longer than he could have been imprisoned, if he had been convicted.  The court recognized that civil commitment of a dangerous and mentally ill person was justified, not because he was in pretrial custody, but because he was in federal custody.  The court reasoned that the "district court erred in implicitly tying the continuing validity of appellant's non-punitive § 4246 commitment to the punitive objections of the original criminal charge."  Sahhar II, 56 F.3d at 1029; see Jones v. United States, 463 U.S. 354, 368-69 (1983) (maximum sentence for commission of federal criminal offense did not provide constitutional limit for duration of civil commitment).  In other words, the fact that the indictment was no longer in place was "irrelevant to the governmental interests at stake: 'the control and treatment of dangerous persons within the federal criminal justice system who are incompetent to stand trial'".  (Sahhar II, 56 F.3d at 1029 (quoting Sahhar I, 917 F.2d at 1203)).

The governmental interest at stake in this case is equally

compelling.  Section 4248 recognizes the federal government's interest in civilly committing a sexually dangerous person in its custody with the goal of protecting members of our society from sexually dangerous acts.  Moreover, by establishing a civil commitment scheme that applies to sexually dangerous persons in federal custody, the federal government is helping to fill a gap left by the majority of states that do not have comparable civil commitment schemes for sexually dangerous persons.

Section 4248 helps to fill this gap while, like Section 4246, containing an express preference for placing the responsibility for caring for dangerous persons on the states. Section 4246 proceedings can only be implemented when "suitable arrangements for State custody and care of the person are not available", 18 U.S.C. § 4246(a), and after a person is committed under the statute, the Attorney General must continue to seek state placement.  18 U.S.C. § 4246(d).  Section 4248 allows the federal government to proceed with civil commitment proceedings for federal prisoners before contacting the state, but requires the Attorney General to contact the state after the court has determined a person to be a "sexually dangerous person."   The difference in the level of the state's involvement between Section 4246 and Section 4248 is "not significant enough to render the Act inconsistent 'with the letter and spirit of the constitution.'"  Shields, 522 F.Supp.2d at 328 (quoting

22

<u>M'Culloch</u>, 17 U.S. at 421).  Both Section 4246 and Section 4248 contain a presumption in favor of state confinement.  Indeed, the Act supports states as the primary actors in the realm of civil confinement of sexually dangerous persons by providing grants to states "for the purpose of establishing, enhancing, or operating effective civil commitment programs for sexually dangerous persons."  42 U.S.C. § 16971(a).  "[L]ike Section 4246, Section 4248 can be viewed as a 'backup' measure, designed to ensure that a dangerous individual does not slip through the cracks simply because he is in federal, as opposed to state, custody."  <u>Shields</u>, 522 F.Supp.2d at 328.

In sum, Congress did not exceed its authority in enacting a civil commitment scheme that applies to persons in the custody of the Bureau of Prisons.  Having committed federal crimes, such persons are properly within the custody of the federal government, and the fact that they may commit federal sex crimes in the future, makes the civil commitment scheme a necessary and proper exercise of Congressional authority.

**II.  <u>Section 4248 Is Civil and Not Criminal in Nature.
Respondent's "Motion to Dismiss No. 2 On the Ground that
Section 4248 Violates the Constitution's Ex Post Facto,
Double Jeopardy, and Cruel and Unusual Punishment Clauses"
is DENIED</u>**

The arguments made by Respondent in his Motion to Dismiss No. 2 hinge on whether Section 4248 is considered civil or criminal in nature.  The Court is not persuaded by Respondent's

argument that Section 4248 is punitive and therefore criminal in nature.  In determining whether a statute is civil or criminal, the Court undertakes two inquires:

> First, did Congress express a preference? Second, even if Congress intended that the statute be civil, is the statutory scheme nevertheless so punitive in purpose or effect that it negates the intent?

Young v. Weston, 344 F.3d 973, 976 (9th Cir. 2003) (finding Washington's sexually violent predator statute to be civil in nature).

The Court agrees with the other district courts that have addressed this issue and finds that the commitment procedures established by Section 4248 do not constitute criminal proceedings.  See Shields, 522 F.Supp.2d at 337.  As instructed by Young and Supreme Court precedent, the Court first looks at the statute's construction and considers the question of congressional intent.  See Hendricks, 521 U.S. at 361.  While a "civil label is not always dispositive," the Hendricks Court explained that it will only reject the legislature's stated intent when the challenging party provides " 'the clearest proof' that 'the statutory scheme [is] so punitive either in purpose or effect as to negate [the State's] intention.' " 521 U.S. at 361, (alteration in original) (quoting United States v. Ward, 448 U.S. 242, 248-49 (1980)).  The title of Section 4248 includes the phrase "civil commitment".  Other places in the Act also refer to commitment under the scheme as "civil".  This shows Congress'

24

intent to create a civil, as opposed to a criminal, commitment scheme.  The fact that Section 4248 is codified within the criminal code does not evidence congressional intent to create a criminal commitment scheme.  See Smith v. Doe, 538 U.S. 84, 94 (2003) (statute's labels and location do not by themselves transform a civil remedy into a criminal one).  The Ninth Circuit Court of Appeals has found other civil commitment provisions codified in the same chapter to be civil in nature.  See United States v. Phelps, 955 F.2d 1258, 1262 (9th Cir. 1992) (finding that district court did not err in determining that 18 U.S.C. § 4243(f) is "civil" in nature); Sahhar I, 917 F.2d at 1206-07 (rejecting Fifth Amendment due process and Sixth Amendment trial by jury claims to 18 U.S.C. § 4246, authorizing civil commitment of criminal defendants found incompetent to stand trial).  The fact that Congress did not include any safeguards associated with the criminal process also illustrates its intent to create a civil scheme.  See Smith, 538 U.S. at 96 (citing United States v. Ursery, 518 U.S. 267, 289 (1996)).  The Court finds that in enacting Section 4248, Congress intended to enact a regulatory scheme that is civil in nature.  The Court ordinarily defers to the legislature's stated intent and only the clearest proof will suffice to override that intent.  Hendricks, 521 U.S. at 361.  In this case, there is no clear proof that Congress intended to create anything other than a civil commitment scheme designed to

protect the public from harm.

The Court next turns to the question of whether the statutory scheme is so punitive in purpose or effect that it negates Congress' intent.  The Supreme Court's decision in Hendricks provides guidance for this inquiry.  The civil commitment scheme under Section 4248 shares similarities with the state civil commitment scheme which the Supreme Court found constitutional in that case.  Like the state civil commitment scheme at issue in Hendricks, Section 4248 "does not implicate either of the two primary objectives of criminal punishment: retribution or deterrence"; the restriction of freedom of "the dangerously mentally ill" is a "legitimate nonpunitive governmental objective"; and the civil commitment provisions do "not intend an individual committed pursuant to the Act to remain confined any longer than he suffers from a mental abnormality rendering him unable to control his dangerousness." Hendricks, 521 U.S. at 361; see Allen v. Illinois, 478 U.S. 364, 375 (1986) (concluding that "proceedings under the [Illinois Sexually Dangerous Persons] Act are not 'criminal' within the meaning of the Fifth Amendment's guarantee against compulsory self-incrimination").

Because the Court finds that Section 4248 is civil and not criminal in nature, the Constitution's *Ex Post Facto*, Double

26

Jeopardy, and Cruel and Unusual Punishment Clauses[5] do not apply.

### III. Respondent's Motion for an Order Requiring the Government to Establish the Criteria of Commitment Beyond a Reasonable Doubt is DENIED

Section 4248(d) provides for commitment if, after the hearing, "the court finds by clear and convincing evidence that the person is a sexually dangerous person". In order to fall within the definition of "sexually dangerous person", the person must have engaged or attempted to engage in sexually violent conduct or child molestation *and* must be sexually dangerous to others. Civil commitment pursuant to Section 4248 requires two primary determinations: (1) that the person has engaged or attempted to engage in sexually violent conduct or child molestation; and (2) that the person is sexually dangerous to others. See 18 U.S.C. § 4247(a)(5). Under Section 4247(a)(6), defining "sexually dangerous to others", the second determination requires two findings: (a) that the person "suffers from serious mental illness, abnormality, or disorder" and (b) as a result of the serious mental illness, abnormality, or disorder, the person "would have serious difficulty in refraining from sexually violent conduct or child molestation if released."

Respondent's motion raises the issue of what burden of proof applies to each of the determinations required for civil

---

[5] Any challenge to the conditions of a civil confinement must be brought as a due process challenge. See Jones v. Blanas, 393 F.3d 918, 933 (9th Cir. 2004).

commitment under Section 4248.

A standard of proof "instruct[s] the factfinder concerning the degree of confidence our society thinks he should have in the correctness of factual conclusions for a particular type of adjudication." Addington v. Texas, 441 U.S. 418, 423 (1979) (citing In re Winship, 397 U.S. 358, 370 (1970) (Harlan, J., concurring)). "[A]dopting a standard of proof is more than an empty semantic exercise." Id. at 425, 99 S.Ct. 1804 (internal quotation marks omitted). The Supreme Court has instructed that, when adopting a standard of proof for civil commitment proceedings, a court "must assess both the extent of the individual's interest in not being involuntarily confined indefinitely and the state's interest in committing the emotionally disturbed under a particular standard of proof." Id. A court "must be mindful that the function of legal process is to minimize the risk of erroneous decisions." Addington, 441 U.S. at 425 (citing Mathews v. Eldridge, 424 U.S. 319, 335 (1976)).

### A. *Standard of Proof to Determine if a Person Has Engaged or Attempted to Engage in Sexually Violent Conduct or Child Molestation*

At the June 19, 2008, status conference, the Court orally ruled on Respondent's motion, granting it in part and denying it in part. The Court granted Respondent's motion insofar as it found the proper standard of proof to be applied to the "engaged or attempted to engage in" determination was not clear and

28

convincing evidence, but rather, beyond a reasonable doubt. Further analysis of the facts before the Court, however, shows that the Court need not reach the issue.

Under the facts of this case, the Court need not choose between the different standards of proof the parties propose for the determination that the certified person "has engaged or attempted to engage in sexually violent conduct or child molestation". The factual evidence presented in support of the determination that Respondent engaged or attempted to engage in child molestation is not in question. He has been convicted of both federal and state charges that involve minors. His federal conviction is for mailing child pornography in interstate commerce, in violation of Title 18 U.S.C. § 2252 (a)(1), a class C felony. In addition to the conduct of which Abregana was convicted, he admitted to oral copulation with a 15 year old boy he regarded as his "boyfriend". Respondent acknowledged that when the government searched Respondent's computer it recovered thirteen images of him engaged in oral copulation with the minor.

The state conviction involved sexual assault in the fourth degree, a violation of Hawaii Revised Statute § 707-733, a misdemeanor. The conviction involved exposing himself, while stimulating himself with his pager, to a 12 year old boy he had invited to sit beside him in a movie theater. Therefore, even if the beyond a reasonable doubt standard were to apply, that higher

standard has been satisfied under the facts of this case.  The
Court will not consider the application of the statute to others
not before the Court.

    **B.**    ***Standard of Proof to Determine if a Person is Sexually Dangerous to Others***

    As to the appropriate burden of proof to be applied to the
determination of whether a person is sexually dangerous to
others, the United States Supreme Court's decisions in In re
Winship and Addington are instructive.  In Addington, the Court
considered the appropriate standard for determining whether the
proposed patient was mentally ill, required hospitalization for
his own welfare and for the protection of others, and was
mentally incompetent under a Texas state law governing
involuntary civil commitments.  The Addington Court found the
clear and convincing standard constitutionally sufficient in the
civil commitment context.  The Court expressly rejected
application of the "beyond a reasonable doubt standard of proof"
applicable in criminal prosecutions and delinquency proceedings.
Driving the Court's concern was the feasability of making
determinations based on a psychiatric diagnosis beyond a
reasonable doubt.  Addington, 441 U.S. at 429-31.  Distinguishing
civil commitment proceedings from delinquency proceedings or
criminal prosecution, the Supreme Court pointed out: "There may
be factual issues to resolve in a commitment proceeding, but the
factual aspects represent only the beginning of the inquiry.

Whether the individual is mentally ill and dangerous either to himself or others and is in need of confined therapy turns on the meaning of the facts which must be interpreted by expert psychiatrists and psychologists."  Addington, 442 U.S. at 429.

Under Addington, there is no doubt that the clear and convincing standard is constitutional as applied to the court's determination that the certified person is "sexually dangerous to others", that is, (a) he "suffers from serious mental illness, abnormality, or disorder," and (b) as a result of the serious mental illness, abnormality, or disorder, he "would have serious difficulty in refraining from sexually violent conduct or child molestation if released."

The Addington Court took great care to distinguish In re Winship.  Addington, 441 U.S. at 418-19.  In In re Winship the Supreme Court discussed the appropriate burden of proof in a New York state juvenile delinquency proceeding.  The Supreme Court held that due process required application of the beyond the reasonable doubt standard, even though the proceedings were considered civil in nature.  In re Winship, 397 U.S. at 368.  As the Addington Court pointed out, juvenile proceedings are fundamentally different from civil commitment proceedings.  Juvenile proceedings are considered civil in nature only because of the age of the individual subject to such proceedings.  Application of the reasonable doubt standard rests on the fact

that the adjudicatory process of the juvenile involves a charge
that would constitute a crime if committed by an adult.  The
decision is purely one of determining what facts have occurred in
the past.  In re Winship does not in any way teach that a higher
burden of proof applies to the Court's forward looking inquiry of
whether the certified person is "sexually dangerous to others."

The determination to be made pursuant to Section 4248 as to
whether a person is "sexually dangerous to others" is a similar
determination as was at issue in Addington.  As with the statute
at issue in Addington, the proof required for the forward-looking
sexually dangerous person determination includes evidence derived
from psychiatrists and psychologists who have examined the
Respondent.  "The subtleties and nuances of psychiatric diagnosis
render certainties virtually beyond reach in most situations."[6]
Addington, 441 U.S. at 430.

The Court also notes that Section 4248 contains similar
procedural safeguards to those highlighted in Addington which
minimize the risk of erroneous confinement and the need for a

---

[6]As the Addington Court explained: "There may be factual
issues to resolve a commitment proceeding, but the factual
aspects represent only the beginning of the inquiry.  Whether the
individual is mentally ill and dangerous to either himself or
others and is in need of confined therapy turns on the meaning of
the facts which must be interpreted by expert psychiatrists and
psychologists.  Given the lack of certainty and the fallibility
of psychiatric diagnosis, there is a serious question as to
whether a state could ever prove beyond a reasonable doubt that
an individual is both mentally ill and likely to be dangerous."
Addington, 441 U.S. at 429.

higher burden of proof.  See United States v. Dowell, 2007 LEXIS 96563 (W.D. Ok. Nov. 26, 2007) (rejecting respondent's argument that application of clear and convincing standard to all determinations required by the Act violated due process).  In Sahhar I, the Ninth Circuit Court of Appeals relied on Addington and found that application of the clear and convincing standard to Section 4246 civil commitment proceedings for mentally ill persons, found to create a substantial risk of bodily injury to another, did not violate due process.  Sahhar I, 917 F.2d at 1207-08.

The Court holds that application of the clear and convincing standard to the determination that the certified person is "sexually dangerous to others" does not violate due process.

**IV.  Respondent's "Motion for an Order Regarding the Applicability of the Fifth and Sixth Amendments in § 4248 Proceedings" is DENIED**

On August 14, 2007, Respondent filed a "Motion for an Order Regarding the Applicability of the Fifth and Sixth Amendments in a § 4248 Proceeding".  The basis for Respondent's motion is that Section 4248 imposes a punishment for Respondent's allegedly criminal conduct requiring all constitutional protections provided by the Fifth and Sixth Amendments to criminal defendants.  Respondent states that "[t]hese protections include the Fifth Amendment's indictment and self-incrimination clauses. . . and "all of the protections set forth in the Sixth Amendment"

33

(Motion for an Order Regarding Applicability of Fifth and Sixth
Amendments at 12.)   In sum, Respondent's motion: requests a
probable cause determination by a grand jury, invokes the Fifth
Amendment's protection against self-incrimination clause, and
claims that he has a right to a jury trial.

### A.   Need for a Probable Cause Determination

Respondent's initial motion, filed on June 25, 2008, did not
request a probable cause hearing before this Court or any other
neutral decision-maker.   Rather than challenging the Act as
failing to provide adequate due process protections, Respondent
challenged the statutory commitment scheme as a whole, arguing
that proceedings under Section 4248 are, fundamentally, criminal
in nature.   Respondent's motion did not present any argument as
to what process he was due after being certified under the act
and detained.   Instead, he challenged the constitutionality of
the certification procedure itself, arguing that his case must be
dismissed unless the government obtained an indictment from a
grand jury establishing probable cause to believe that grounds
for confinement under Section 4248 exist.   Because the Court
finds that Section 4248 is civil and not criminal in nature, the
Fifth Amendment indictment clause does not apply.

Respondent's counsel requested an immediate probable cause
hearing before this Court for the first time when the full civil
commitment proceedings had commenced in June, 2008.   (See

34

Respondent's Memorandum Regarding the Need for a Probable Cause Hearing, June 25, 2008, Doc. 52.)   The request came after the Court asked both counsel to review United States v. Wilkinson, 2008 WL 427295 (D. Mass. 2008).

        Even if Respondent's counsel had timely requested a separate probable cause hearing, and assuming arguendo a probable cause hearing is constitutionally required for Section 4248 civil commitment proceedings, there was no due process violation under the facts of this case.   The Government filed the Notice of Certification on July 29, 2007.   Approximately two weeks later, Respondent filed the five motions challenging the Act's constitutionality.   None of Respondent's motions expressly requested a probable cause hearing.   Respondent's request for a grand jury determination is not tantamount to a request for a probable cause hearing.

    Respondent's detention prior to his first hearing date was not unreasonably long.   See Logan v. Arafeh, 346 F.Supp. 1265, 1268-69 (D. Conn. 1972), aff'd sub nom. Briggs v. Arafeh, 411 U.S. 911 (1973) (45 day detention of person certified by a physician not to be a danger to himself or others prior to judicial determination of validity of his confinement was not unreasonably long); Project Release v. Prevost, 722 F.2d 960, 974 (2d Cir. 1983)(60 day confinement prior to probable cause hearing was not unreasonably long); see also Carty v. Nelson, 426 F.3d

1064, 1074 (9ᵗʰ Cir. 2005) (citing <u>Vitek v. Jones</u>, 445 U.S. 480, 494-97 (1980) (setting forth due process requirements for involuntary confinement).  The Court initially scheduled this matter for hearing on September 24, 2007.  At that hearing, the Court took the motions under advisement and ordered a psychiatric or psychological examination of Respondent.  Respondent's counsel received the report of that examination in late December 2007, or January 2008, and made no motion for any type of probable cause or preliminary hearing at that time.  The parties filed further pleadings at various times.  The full evidentiary hearing was continued several times with consent of both parties as well as Respondent's express consent.  The Court finds that, under these facts, Respondent was afforded adequate due process as he had ample opportunity to contest the constitutionality of his continued detention under the Act pending a full civil commitment hearing.

**B.   Fifth Amendment Due Process Protections Against Self-Incrimination**

The Self-Incrimination Clause of the Fifth Amendment to the U.S. Constitution provides that no person "shall be compelled in any criminal case to be a witness against himself."  A person seeking to establish a Fifth Amendment claim must prove two things: "(1) that the testimony desired by the government carried the risk of incrimination, . . . and (2) that the penalty he suffered amounted to compulsion."  <u>United States v. Antelope</u>, 395

F.3d 1128, 1134  (9th Cir. 2005) (citations and quotations omitted).

Civil commitment proceedings are civil in nature to which the Fifth Amendment right against self-incrimination does not apply.  Allen v. Illinois, 478 U.S. 364, 375 (1986) ("Illinois proceedings here considered were not "criminal" within the meaning of the Fifth Amendment to the United States Constitution, and that due process does not independently require application of the privilege."); Huftile v. Miccio-Fonseca  2007 WL 2827791, at *12  (E.D.Cal. 2007).

While Respondent cites the Ninth Circuit Court of Appeals decision in United States v. Antelope, 395 F.3d 1128 (9th Cir. 2005) in support of his claimed privilege, he has failed to show that any statements made to mental health professionals were coerced, and made as a condition of his continued liberty.  Also, unlike in Antelope, which involved criminal proceedings to revoke a defendant's conditional release, this is a civil proceeding.

### C.   No Fifth or Sixth Amendment Right to Jury Trial

The "fact that a proceeding will result in loss of liberty does not ipso facto mean that the proceeding is a 'criminal prosecution' for purposes of the Sixth Amendment."  Middendorf v. Henry, 425 U.S. 25, 37 (1976).  Involuntary civil commitment "constitutes a significant deprivation of liberty that requires due process protection."  Addington v. Texas, 441 U.S. 418, 425

(1979).  The Sixth Amendment right to confrontation does not attach in civil commitment proceedings.  See Rose v. Mayberg, 454 F.3d 958 (9th Cir. 2006) (due process did not require jury determination under California's Sexually Violent Predator Act).

Respondent likewise does not have a right to a jury trial under the Fifth Amendment Due Process Clause.  See United States v. Sahhar, 917 F.2d 1197, 1205-06 (9th Cir. 1990) ("[F]ederal commitment serves a regulatory, rather than punitive, purpose and section 4246 [permitting civil commitment of mentally incompetent prisoners due for release] need not incorporate the right to a jury trial."); id. at 1207 ("we conclude that due process does not require jury trial in a section 4246 proceeding").

D.    Right to Appointment of Counsel

18 U.S.C. § 4247(d) provides for counsel during the civil commitment hearing.  Respondent's motion raises the issue of whether a civilly committed person is entitled to counsel throughout his or her confinement.  The Ninth Circuit Court of Appeals' opinion in United States v. Budell, 187 F.3d 1137 (9th Cir. 1999) is instructive as to the additional due process rights afforded a civilly committed individual.  "[B]ecause an adverse result in a [civil] commitment hearing results in a substantial curtailing of the respondent's liberty ..., the Supreme Court has held that procedural due process does guarantee certain protections to civil commitment respondents."  Budell, 187 F.3d

38

at 1141.   The Budell court addressed the due process rights of an insanity acquittee, after he had been hospitalized and civilly committed under 18 U.S.C. § 4241.   The court began with the fundamental proposition that an insanity acquittee is entitled to due process protection to the extent he may no longer be a danger to society:

> "At the least, due process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed." Jackson v. Indiana, 406 U.S. 715, 738, 92 S.Ct. 1845, 32 L.Ed.2d 435 (1972). "In short, a State cannot constitutionally confine without more a nondangerous individual who is capable of surviving safely in freedom by himself or with the help of willing and responsible family members or friends."   O'Connor v. Donaldson, 422 U.S. 563, 576, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975).

Budell, 187 F.3d at 1141 -1142.

In considering the due process rights of the civilly committed individual, the Budell court concluded that "due process requires the statutory scheme to provide assurance that the insanity acquittee's right to regular review of his continued confinement will be adequately protected."   Budell, 187 F.3d at 1142.   The Court found the protection afforded by the regular annual reporting required contained in 18 U.S.C. 4247(e) "concerning the mental condition of the person and containing recommendations concerning the need for his continued confinement" to, standing alone, be insufficient to protect the civilly committed individual's due process rights.

Rather, a civilly confined insanity acquittee has a right to appointed counsel throughout his commitment:

> To effectively insure that an insanity acquittee is afforded his due process right to regular review of his continued confinement and to effectuate a reasonable interpretation of the language of 18 U.S.C. § 4247(h)[7] such acquittee should be afforded counsel for the purpose of filing a motion for a discharge hearing. That can only be accomplished by appointing counsel "to represent the acquittee in all matters connected with the commitment, including the monitoring of the acquittee's mental health, the reading of all reports on the acquittee, and the initiation of any necessary action to protect the acquittee's interests."

Budell, 187 F.3d at 1143 (quoting United States v. LaFromboise, 836 F.2d 1149, 1152 (8th Cir. 1988)(footnote added).

Following Budell, and in light of the important due process protections afforded a civilly committed person, the Court holds that those facing civil commitment under the Adam Walsh Act are entitled to counsel and the right to counsel continues throughout their confinement.

**V.      The Involuntary Confinement Scheme Under the Act Is Not Void for Vagueness.  Respondent's "Motion to Dismiss No. 3 (On the Ground that §§ 4247(a)(5), 4247(a)(6),and 4248 are Void for Vagueness" is DENIED**

Respondent argues that the involuntary civil commitment scheme under the Act is unconstitutionally vague because it does not define the key criteria that the Court must find before ordering commitment under Section 4248.

---

[7] Section 4247(h) provides that counsel for the person, or his legal guardian, may file a motion for hearing as to whether the person should be discharged from the facility.

40

"The fundamental rationale underlying the vagueness doctrine is that due process requires a statute to give adequate notice of its scope." Botosan v. Paul McNally Realty, 216 F.3d 827, 836 (9th Cir. 2000). Fair notice is deemed essential because "[v]ague laws may trap the innocent." Grayned v. City of Rockford, 408 U.S. 104, 108 (1972). "A statute is void for vagueness when it fails to give 'adequate notice to people of ordinary intelligence of what conduct is prohibited, or if it invites arbitrary and discriminatory enforcement.'" United States v. Hungerford, 465 F.3d 1113, 1117 (9th Cir. 2006) (quoting United States v. Tabacca, 924 F.2d 906, 912 (9th Cir. 1991)).

Generally, in undertaking a vagueness inquiry, the Court must consider (1) whether the law gives a person of ordinary intelligence a reasonable opportunity to know what is prohibited and (2) whether the law gives explicit standards to those who apply them so they may not be enforced in an arbitrary and capricious manner. See Hill v. Colorado, 530 U.S. 703, 732 (2000); Dannenberg v. Ornoski, 2008 WL 1734766, at *7 (N.D.Cal. April 14, 2008); Kolender v. Lawson, 461 U.S. 352, 357 (1983)(a penal statute need only "define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.") A statute need not

define every factual situation that may occur.  <u>Boyce Motor Lines v. United States</u> 342 U.S. 337, 340 (1952).

The Act authorizes the civil commitment of a "sexually dangerous person" which is defined as a "person who has engaged or attempted to engage in sexually violent conduct or child molestation and who is sexually dangerous to others."  <u>See</u> 18 U.S.C. § 4248(d); 18 U.S.C. § 4247(a)(5).  "Sexually dangerous to others is defined as meaning that the person suffers from a serious mental illness, abnormality, or disorder as a result of which he would have serious difficulty in refraining from sexually violent conduct or child molestation if released."  18 U.S.C. § 4247(a)(6).

Respondent argues that the key terms used in Section 4248 are unconstitutionally vague.  Respondent's as applied challenge must fail because Respondent clearly engaged in some conduct proscribed by Section 4248.  <u>See</u> <u>Village of Hoffman Estates v. The Flipside, Hoffman Estates, Inc.</u>, 455 U.S. 489, 495 n. 7 (1982);  <u>Schwartzmiller v. Gardner</u>  752 F.2d 1341, 1346 (9th Cir. 1984) ("A plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others.");  <u>United States v. Spy Factory, Inc.</u>, 951 F.Supp. 450, 466 (S.D.N.Y. 1997) ("Because the statue is judged on an as applied basis, one whose conduct is clearly proscribed by the statute cannot successfully challenge it for

vagueness"). Respondent has clearly committed acts which fall within even the most restrictive definition of child molestation, thereby defeating Respondent's as applied vagueness challenge. A reasonable person with the convictions and history of Abregana would know his conduct creates a risk of his certification under Section 4248. See United State v. Strauss, 999 F.2d 692, 697 (2d Cir. 1993) ("Objections to vagueness ... rest on the lack of notice, and hence may be overcome in any specific case where reasonable persons would know that their conduct is at risk.") (quoting Maynard v. Cartwright, 486 U.S. 356, 361 (1988)).

Moreover, Section 4248 satisfies both prongs of the vagueness inquiry. First, the Act's terms satisfy the minimal notice requirement such that a person of ordinary intelligence has a reasonable opportunity of knowing what conduct is prohibited. See Shields, 522 F.Supp.2d at 339 (citing United States v. Carta, 503 F.Supp.2d 405, 410 ("Terms such as 'child molestation' and 'sexually violent conduct' have a plain meaning and are not 'so vague and standardless that it leaves the public uncertain'")). The terms used in the Act provide sufficiently explicit standards to defeat a vagueness challenge. Other courts addressing void for vagueness challenges to civil commitment statutes employing similar terms have found them to be constitutionally sufficient. See In re K.A.P., 916 A.2d 1152, 1159 (Pa. Super. Ct. 2007); Westersheide v. State, 831 So.2d 93,

43

106 (Fla. 2002); Martin v. Reinstein, 987 P.2d 779, 803-04 (Ariz. Ct. App. 1999); In Re Young, 857 P.2d 989, 1013 (Wash. 1993).

The Act's terms also satisfy the second part of the vagueness inquiry.  The terms used in the Act, including "serious mental illness", "serious difficulty", and "child molestation", provide sufficiently explicit standards to defeat a vagueness challenge.  See Peterson v. Gaughan, 404 F.2d 1375, 1377 (1st Cir. 1968) (rejecting vagueness challenge to Massachusetts sexually dangerous person commitment statute which included terms such as "misconduct in sexual matters" and "general lack of power to control his sexual impulses").

The Act does not "impermissibly delegate[] basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application."  Grayned, 408 U.S. at 108-09. Put another way, the language of the statute is not so imprecise so as to make discriminatory enforcement a real possibility.  See Gentile v. State Bar of Nevada, 501 U.S. 1030, 1051 (1991).  The law recognizes that effective law enforcement often requires the exercise of some degree of prosecutorial judgment.  See United States v. Nadi, 966 F.2d 548, 550 (2d Cir. 1993).

A review of the Adam Walsh Act in its entirety and the place of Section 4248 within the Act show a vagueness challenge cannot stand.

The meaning of the term "child molestation" is clear from the plain language and the articulated congressional intent.  See Texaco, Inc. v. United States, 528 F.3d 703, 707 (9th Cir. 2008).

In this Court's July 8, 2008, Minute Order, it clarified whether the term "child molestation" as used in the civil commitment provisions of the Act requires a "violent" act.  The Court held that under the plain language of the statute the phrase "child molestation" does not require a sexually violent act.  The statute uses the disjunctive "or" to separate the two types of conduct: "sexually violent conduct or child molestation".  Under basic principles of statutory construction, the use of "or" to join two terms indicates that the two terms have different meanings.  See United States v. Arreola, 467 F.3d 1153 (9th Cir. 2006) ("As a matter of grammatical construction, the use of the disjunctive indicates that Congress was addressing two separate acts.").  Further, Congress used the modifier "violent" to qualify "sexual conduct", but did not use it to limit the types of "child molestation" covered by the statute.  The Court presumes that Congress intended the exclusion.  See Webb v. Smart Document Solutions, LLC, 499 F.3d 1078, 1084 (9th Cir. 2007) ("The canon of statutory construction expressio unius est exclusio alterius, . . . 'creates a presumption that when a statute designates certain persons, things, or manners of operation, all omissions should be understood as exclusions'")

45

(citations omitted).

Looking at the Act as a whole it is apparent that Congress intended "child molestation" to include a number of different types of sexual offenses against a person under the age of 18. For purposes of the Sex Offender Registration and Notification Act a "minor" is "an individual who has not attained the age of 18 years."  42 U.S.C. § 16911(14).  The sex offender registration guidelines apply when there is a "sex offense," a term which includes a "a criminal offense that is a specified offense against a minor."  42 U.S.C. § 16911(5)(A)(ii).  The Act defines "specified offense against a minor" expansively "to include all offenses by child predators" and "an offense against a minor that involves any of the following":

(A)  An offense (unless committed by a parent or guardian) involving kidnapping.

(B)  An offense (unless committed by a parent or guardian) involving false imprisonment.

(C)  Solicitation to engage in sexual conduct.

(D)  Use in a sexual performance.

(E)  Solicitation to practice prostitution.

(F)  Video voyeurism as described in section 1801 of Title 18.

(G)  Possession, production, or distribution of child pornography.

46

> (H)  Criminal sexual conduct involving a minor, or the use of the Internet to facilitate or attempt such conduct.
>
> (I)  Any conduct that by its nature is a sex offense against a minor.

42 U.S.C. § 16911(7).

Reviewing this list, it is apparent that a number of the offenses enumerated in the Sex Offender Registration and Notification Act as offenses against a minor do not require physical contact between the perpetrator and the minor.  Other federal sex crimes involving minors include distribution, receipt, and possession of child pornography (18 U.S.C. §§ 2252 and 2252A), coercion or enticement of an individual under 18 years of age to engage in unlawful sexual activity (18 U.S.C. § 2422), and transportation to engage in unlawful sexual activity with a minor (18 U.S.C. § 2423).  Federal law has consistently defined "molestation" as relating to a broad category of crimes, ranging from exploitation to sexual abuse.  For example, the Court finds that Abregana's state conviction for sexual assault in the fourth degree, while it did not involve physical contact with the minor, constitutes child molestation.

The Court finds that "child," as used in the Adam Walsh Act, is intended to apply to persons under the age of 18.  The purpose of the Adam Walsh Act was to toughen laws "to protect the public

from sex offenders and offenders against children." 42 U.S.C. § 16901.  From the definition of "minor" as set forth in the Sex Offender Registration and Notification Act, it is apparent that Congress intended to protect persons under the age of 18 when it enacted the Adam Walsh Act.  The fact that the sex offender registration and notification provisions use the term "minor" while the civil commitment provisions refer to "child" is not significant.  Federal sex crime statutes, other than the Adam Walsh Act, use the terms "child" and "minor" interchangeably.  See 18 U.S.C. § 2251 (pertaining to "sexual exploitation of children" and prohibiting, among other things, inducement of a "minor" to engage in sexually explicit conduct).

Gleaning congressional intent from the statutory scheme as a whole and from the context in, and purpose for, which Congress enacted the Adam Walsh Act, it is apparent that Congress did not intend to limit application of the civil commitment scheme to victims of a certain age (e.g. 12, 13, or 14), but rather, intended that the scheme be applied to a wide variety of exploitative acts directed against minors, defined as persons under the age of 18.[8]

---

[8]  Congress carved out a specific exception where it intended there to be one. The Sex Offender and Registration Notification Act provisions, for instance, account for consensual sexual activity between minors and between a minor and a non-minor by excluding consensual sexual conduct from the definition of sex offense "if the victim was at least 13 years old and the offender was not more than 4 years older than the victim". 42

48

The case of <u>United States v. Byun</u>, ___ F.3d ___ , 2008 WL 4387432 (9th Cir. Aug. 14, 2008), demonstrates the appropriate analysis that is applicable in questions of this nature.   The Ninth Circuit Court of Appeals examined whether the defendant's violation of 8 U.S.C. § 1328 for "importation into the United States of any alien for purpose of prostitution" constituted a "specified offense against a minor" under 18 U.S.C. § 16911 (7)(I), and was therefore a "sex offense" within the meaning of the Act, for purposes of the Act's sex offender registration requirements.   The <u>Byun</u> court found that the defendant's conduct fell within the Act's registration provisions even though the definition of "sex offense" did not specifically list defendant's offense conduct.   <u>Byun</u>, 2008 WL 3487432, at *5.   In doing so, the <u>Byun</u> court applied the catchall provision for "conduct that by its nature is a sex offense against a minor".   <u>Id.</u> at *5.   The court interpreted the definition of sex offense in the context of the statue as a whole.   <u>Id.</u> at *6, n.9.   The <u>Byun</u> court did not find the sex offender registration provisions to be vague even though the "tier II" category did not specifically define sex offense.

Finally, courts may also look at any agency's interpretation of a statute for guidance.   In this case, the Federal Bureau of Prisons ("BOP") is charged with implementing the civil commitment

---

U.S.C. § 16911(5)(C).

49

scheme.  Although the BOP has not finalized its proposed regulations, the Court may nonetheless turn to them for guidance as to how the implementing agency may implement the Act's directive.  <u>See</u> <u>Texaco Inc.,</u> 528 F.3d at 710 (quoting <u>Morales v.</u> <u>Sociedad Espanola de Auxilio Mutuo y Beneficencia</u>, 524 F.3d 54 (1st Cir. 2008) ("If, however, the language admits of a possible ambiguity and Congress has not spoken directly to the issue, the court must look for guidance to any relevant regulations promulgated by an agency charged with administering the statute.") (citations omitted);  <u>Chevron</u>, 467 U.S. at 843 (court is bound to apply the agency's interpretation of the statute, as embodied in a regulation, as long as it constitutes a permissible construction of the statutory text).  The proposed regulations promulgated by the Bureau of Prisons define "child molestation" as "any unlawful conduct of a sexual nature with, or sexual exploitation of, a person under the age of 18 years."  Department of Justice, Bureau of Prisons, Civil Commitment of a Sexually Dangerous Person,  72 Fed. Reg. 43205, Aug. 3, 2007, (to be codified at 18 C.F.R. § 549.73).  The BOP's definition reflects Congress' intent to strengthen laws against sex offenders and offenders against children and is consistent with the definitions of "minor" and "sex offenses against a minor" as used in the sex offender registration and notification act provisions.

The terms of the Adam Walsh Act have a plain meaning that

does not leave a person uncertain as to their application.

<u>**CONCLUSION**</u>

For the foregoing reasons,

(1)  Respondent's Motion to Dismiss No. 1 (On the Ground that Congress Exceeded Its Constitutional Authority in Enacting 18 U.S.C. Section 4248) (Doc. 31) is **DENIED**.

(2)  Respondent's Motion to Dismiss No. 2 (On the Ground That Section 4248 Violates the Constitution's Ex Post Facto, Double Jeopardy, and Cruel and Unusual Punishment Clauses) (Doc. 32) is **DENIED.**

(3)  Respondent's Motion For An Order Requiring the Government to Establish the Criteria for Commitment Beyond a Reasonable Doubt (Doc. 34) is **DENIED.**

(4)  Respondent's Motion for an Order Regarding the Applicability of the Fifth and Sixth Amendments in a Section 4248 Proceeding (Doc. 30) is **DENIED**.

(5)  Respondent's to Motion Dismiss No. 3 (On the Ground That Sections 4247(a)(5), 4247(a)(6), and 4248 Are Void for Vagueness) (Doc. 33) is **DENIED.**

IT IS SO ORDERED.

Dated:   Honolulu, Hawaii, August 22, 2008.



   /s/ Helen Gillmor
Helen Gillmor
Chief United States District Judge